In the Matter of Chauncey E. Treadwell, an Attorney, Respondent.

First Department, November 11, 1932.

*Einar Chrystie*, for the petitioner.

*Chauncey E. Treadwell*, respondent in person.

Finch, P. J. The respondent was admitted to practice as an attorney and counselor at law in the State of New York on July 24, 1906, at a term of the Appellate Division of the Supreme Court, Second Department, and has been engaged in practice as such attorney since his admission.

By the petition herein the respondent was charged with misconduct as an attorney at law in that (1) he converted to his own use the sum of $1,617.29 of a client, collected in settlement of an action which he had been retained to prosecute, and (2) that he also converted to his own use the sum of $200, refunded to him by the Title Guarantee and Trust Company on behalf of another client.

The respondent answered, and the matter was referred to the Hon. Charles L. Guy, official referee, to take proof of the charges set forth in the petition and to report the same with his opinion thereon. Hearings were had, but before the completion thereof the referee died. Thereafter the Hon. William P. Burr was appointed referee in place of Hon. Charles L. Guy. He also died before any further testimony was taken in the matter, and thereafter the Hon. John M. Tierney was appointed in his stead.

It was stipulated by the petitioner and respondent that the evidence taken before Hon. Charles L. Guy was to be considered with the same force and effect as if taken before the present referee. Hearings were had, and the learned referee has duly reported that he finds the charges established by the evidence.

The matter is now before this court upon the motion of the petitioner for confirmation of the report of the referee and for such other action as may be deemed just and proper.

Pending the determination of this motion, the respondent has moved for the resubmission of the matter to the referee for the consideration of additional written evidence confirmatory of certain testimony of the respondent or, in the alternative, that the evidence be received and considered by this court.

The motion of the respondent is granted to the extent of receiving and considering said evidence, which is not such as affects the vital facts appearing upon this record and found by the referee.

Concerning said facts there is no ·substantial dispute. They are as follows:

In or about September, 1926, Messrs. Antonsanti & LaCosta, a firm of Porto Rican attorneys, retained the respondent to collect a claim which their client, one Merino, had against the Globe and Rutgers Fire Insurance Company of New York on a judgment for some $4,000 obtained in the courts of Porto Rico. The respondent thereafter brought an action against the Globe and Rutgers Fire Insurance Company and recovered a judgment, which was settled by the payment of $3,750 to the respondent on July 13, 1927. Concededly $2,617.29 of the amount collected by the respondent belonged to his clients, being the balance remaining after deducting a fee of twenty-five per cent for the services of the respondent.

The respondent deposited in his account the $3,750 received by him as aforesaid. He cabled his client LaCosta of the settlement, and requested of him a policy of insurance, the return of which was required as a condition of the settlement by the defendant. During the months of July, August and September, 1927, Frank Antonsanti, a member of the firm of Antonsanti & LaCosta, was in New York, and from time to time inquired of the respondent concerning the status of the Merino claim. The respondent withheld from Antonsanti the fact of the payment in settlement thereof. Antonsanti learned of the payment through other sources, and in September called upon the respondent in reference to the matter, when the respondent exhibited to Antonsanti a statement of account showing the share of his client of the amount collected to be $2,617.29. The respondent at the same time told Antonsanti that he had sent or was about to send a check in settlement to LaCosta in Porto Rico. The respondent wrote to LaCosta a letter under date of September 12, 1927, reading as follows: " I duly received yours with the insurance policy, and I enclose statement and check herewith." The respondent, however, did not mail said letter. On September 28, 1927, he wrote to LaCosta as follows

" DEAR LACOSTA: This is a personal letter. I will tell Antonsanti the same when I see him tomorrow.

" I have got into some difficulties with my home and raising a new loan and it is of the utmost importance that my apparent bank balance be as large as possible for credit purposes. The enclosed account has been on my desk from September 12th and I have delayed for that reason.

" Will you be kind and accept the enclosed check for $1,000 and wait ten days or two weeks for the balance. Antonsanti will have all the details."

This letter with check inclosed reached Porto Rico when LaCosta was away on vacation. Upon his return he wrote the respondent requesting if he had not yet sent the balance of $1,617.29 in accordance with the aforesaid letter, that he do so by next mail. Subsequent letters from LaCosta demanding payment were unanswered by the respondent. It was not until after complaint had been made to the grievance committee of the Bar Association that the respondent borrowed $500 from a brother and paid that amount on account. Subsequently the balance was paid upon the successful termination of a litigation in which the respondent had been engaged.

The fact is that the respondent proceeded to use the funds received in settlement of the aforesaid action as soon as received,

and practically the entire amount so received, except the $1,000 sent by his check, was used by the respondent at or about the time the $1,000 was forwarded. The respondent thereafter sought, through Antonsanti, to obtain the approval of LaCosta and his consent to await payment until such time as the respondent was in funds through the expected settlement of a pending action. This action, however, was not settled. It was tried, resulting in a judgment favorable to the respondent. Appeals were taken to the Appellate Division and Court of Appeals, resulting in affirmances. The respondent claims that the unexpected delay caused by the aforesaid appeals, coupled with the fact that the respondent disclosed to Mr. Sifre that a judgment had been recovered upon the claim which the latter had paid, brought about the complaint against the respondent with the grievance committee of the Bar Association.

Whatever may be the motive that brought about the filing of the complaint is of course immaterial here. Upon the uncontroverted facts the respondent first applied the money of his client to his personal use, and then unsuccessfully sought the indulgence of his client. The finding of the learned referee that the respondent is guilty of the charge of conversion is thus sustained by the evidence.

We come now to the further charge of conversion of the sum of $200 deposited by a client of the respondent with the Title Guarantee and Trust Company and subsequently refunded by the latter to the respondent. The executors of the estate of Elizabeth Shoup employed the respondent as attorney in connection with the sale of certain property in which the estate was interested. Upon the closing of title $200 was deposited by the executors with the Title Guarantee and Trust Company to insure the payment of transfer tax. The transfer tax matter having been disposed of, the Title Guarantee and Trust Company on May 28, 1923, sent to the respondent their check for $200 in refund of the aforesaid deposit. The respondent on May 29, 1923, deposited this check in the Bank of Manhattan Company, at Flushing, Long Island, and forwarded to his client his own check on said bank in a like amount inclosed in a letter, reading as follows:

" *May* 28, 1923.

" RICHARD C. SHOUP, Esq.,
    " 63 North Pryor Street,
        " Atlanta, Georgia.

" DEAR SIR: I have this day received a check to my order as attorney from the Title Guarantee & Trust Company, for $200, returning the Transfer Tax Deposit.

" The check says on its face that it is ' Refund of deposit held

in re. transfer tax on Est. of Elizabeth R. Shoup. Receipt produced.' I am depositing this check and I enclose herewith my check to your order for the same amount. I would have endorsed this check over to you directly but its endorsement and deposit by you might constitute a waiver of any claim you have for interest against the Title Company. It is my belief that you are entitled to interest at the rate actually earned, less commissions. I presume you will take this up directly with them but if you wish I will do it for you.

"Very truly yours,
"(sgd)   C. E. TREADWELL."

The aforesaid check was presented for payment and dishonored for insufficient funds. Thereafter the executor of the Shoup estate endeavored unsuccessfully to collect the amount from the respondent. It was not until after the commencement of this proceeding that the respondent paid over the amount, with interest.

In explanation, the respondent claims that he attempted to deposit funds to clear the check, but was informed by the bank that the deposit would not be received, as the account had been unsatisfactory. The bank had previously advised the respondent that no further deposits would be accepted. This notice, however, had been overlooked by the respondent. Upon the respondent explaining the situation to the bank, the latter agreed to accept a deposit to honor the outstanding check, but the check was presented and dishonored before the deposit could be made and the account depleted by the redeposit of other checks returned for insufficient funds in this account. The respondent urges that his financial position thereafter rendered it impossible for him to reimburse his client.

Accepting this version of the matter, and the evidence subsequently submitted by the respondent tends to confirm it, the question inevitably arises why the respondent did not transmit the money to his client by some other means than by check. The answer is obvious, namely, the respondent, because of his financial exigencies, had applied the money to his personal use. The fact that immediately on the receipt of the refund he sent his client a check for the amount and that he subsequently endeavored to clear this check absolves the respondent of any original intention to convert. The fact remains, however, that having the cash in hand to meet the outstanding check, when the respondent learned the check had been dishonored, he failed to send the cash to his client, but instead used it himself.

This court accordingly finds both charges against the respondent sustained by the evidence. Financial difficulties of an attorney,

however extreme, furnish no excuse for the conversion of the moneys of his client. The mitigating circumstances here present are that the respondent has been absolutely truthful and has not attempted to give false and perjurious testimony to obscure the truth. In addition, after complaint was made to the Association of the Bar, the respondent made complete restitution.

The respondent should be suspended for one year, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

MERRELL, McAVOY, MARTIN and SHERMAN, JJ., concur.

Respondent suspended for one year.